UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **GREATER NEW ORLEANS FEDERAL CREDIT UNION** | CIV. ACTION NO. 3:24-00203 |
| **VERSUS** | JUDGE TERRY A. DOUGHTY |
| **MICHEL WATKINS** | MAG. JUDGE KAYLA D. MCCLUSKY |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, are motions to dismiss and remand filed by Plaintiff/Counterclaim Defendant Greater New Orleans Federal Credit Union and Counterclaim Defendant Travis Nguyen. [docs. # 8, 13, 21]. The third motion is opposed. [doc. #23].

For reasons assigned below, it is recommended that the first and second motions [docs. #8, 13] be DENIED AS MOOT, the third motion [doc. #21] be GRANTED, the second amended countercomplaint [doc. #20] DISMISSED WITHOUT PREJUDICE, and the case REMANDED.

**Background**

Greater New Orleans Federal Credit Union ("GNO FCU") filed the instant petition ("the Petition") against Michel Watkins ("Watkins") on February 5, 2024, in the Fourth Judicial District Court, Morehouse Parish, Louisiana. Petition [doc. #1-2]. GNO FCU seeks payment of Watkins' credit card balance of $3,090.88, as well as interest and associated fees. *Id.* at p. 3. Watkins removed the action to this Court on February 9, 2024. Notice of Removal [doc. #1]. Upon removal, Watkins also filed a countercomplaint ("the Countercomplaint") bringing various

counterclaims against GNO FCU and Travis Nguyen ("Nguyen") (collectively "the Counterclaim Defendants"). Countercomplaint [doc. #3].[1]

On March 1, 2024, the Counterclaim Defendants moved to dismiss the Countercomplaint and remand to state court. First M/Dismiss and Remand [doc. #8]. Ten days later, on March 11, 2024, Watkins filed an amended countercomplaint ("the Amended Countercomplaint"). First Amended Countercomplaint [doc. #10]. The Counterclaim Defendants moved to remand the Amended Countercomplaint and remand to state court on April 1, 2024. Second M/Dismiss and Remand [doc. #13]. Watkins once again amended his countercomplaint ("the Second Amended Countercomplaint") on May 28, 2024. Second Amended Countercomplaint [doc. #20]. Therein, Watkins brings counterclaims against the Counterclaim Defendants under 12 U.S.C. § 1431, "Federal Reserve Act 29," 18 U.S.C. § 1348, and "Federal Reserve Act Section 16 part 2." *Id.* The Counterclaim Defendants moved to dismiss the Second Amended Countercomplaint and remand to state court on June 4, 2024 ("the Third Motion to Dismiss and Remand"). Third M/Dismiss and Remand [doc. #21].[2] Watkins filed an opposition to this motion on June 14, 2024. Opposition to Third M/Dismiss and Remand [doc. #23].

Briefing is complete. Accordingly, this matter is ripe.

---

[1] There are no allegations concerning Nguyen's position or relationship to the facts at issue in this case. He is not mentioned in the Petition. Watkins lists Nguyen under "Defendants" on the civil cover sheet ("the Civil Cover Sheet") accompanying his notice of removal. Civil Cover Sheet [doc. #1-1].

[2] The Third Motion to Dismiss and Remand does not adopt or incorporate by reference the previous motions. *See generally* Third M/Dismiss and Remand [doc. #21].

**Discussion**

I. **Legal Standard**

a. *Federal Rule of Civil Procedure 12(b)(6)*

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim," *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010), but "[t]hreadbare recitals" of those elements "supported by mere conclusory statements" are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Factual pleadings that are "merely consistent with" a defendant's liability fall "short of the line between possibility and plausibility." *Id.* (quoting *Twombly*, 550 U.S. at 557). All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff, *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007), although courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

b. *Remand*

A defendant may remove an action from state to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property*

*and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). As this creates a presumption against federal jurisdiction, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction . . . ."), the removal statute is to be construed "strictly against removal and for remand." *Hicks v. Martinrea Automotive Structures, Inc.*, 12 F.4th 511, 514-15 (5th Cir. 2021). The party invoking federal jurisdiction bears the burden of proving the suit lies within the court's limited jurisdiction. *Howery*, 243 F.3d at 916. One path to secure federal jurisdiction on removal is through diversity, which requires (a) complete diversity of citizenship between plaintiffs and defendants, and (b) an amount in controversy greater than $75,000. 28 U.S.C. § 1332(a). In removed actions, the amount in controversy is generally defined as "the sum demanded in good faith in the initial pleading." *Id.* at § 1446(c)(2). Jurisdiction may also be predicated on federal question jurisdiction, which arises in cases where claims arise under "the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

**II. Analysis**

*a.  The First Two Motions to Dismiss*

The first motion to dismiss and remand is directed at the Counterclaim. Memo in Support of First M/Dismiss and Remand [doc. #8-1, p. 1]. The second motion to dismiss and remand is directed at the Amended Counterclaim. Memo in Support of Second M/Dismiss and Remand [doc. #13-1, pp. 1-2]. After these motions were filed, Watkins filed the Second Amended Counterclaim. Second Amended Counterclaim [doc. #20]. "As with an amended complaint, an amended counterclaim supersedes the original counterclaim and becomes the operative counterclaim." *Trivist Oil Co., LLC v. G2 Techs., Corp.*, No. 21-1073, 2022 WL

1785622, at *1 (W.D. Tex. June 1, 2022), *report and recommendation adopted* 2022 WL 18585852 (W.D. Tex. July 18, 2022); *see also Stewart v. City of Houston Police Dept.*, 372 F.App'x 475, 478 (5th Cir. 2010) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."). The Second Amended Countercomplaint does not specifically adopt or incorporate by reference the Countercomplaint or Amended Countercomplaint. *See generally* Second Amended Countercomplaint [doc. #20]. As the first two countercomplaints are superseded and have been rendered legally ineffective, the Counterclaim Defendants' first two motions to dismiss and remand are moot.

Accordingly, it is RECOMMENDED that GNO FCU and Nguyen's first and second motions to dismiss and remand [docs. #8, 13] be denied as moot.

b.   *The Third Motion to Dismiss*

The undersigned now turns to the Third Motion to Dismiss and Remand. At the outset – and out of an abundance of caution – the undersigned will establish what constitutes the relevant pleadings. The Counterclaim Defendants rely in part on the causes of action listed on the Civil Cover Sheet to guide analysis in their first and second motions. *See, e.g.*, Memo in Support of Second M/Dismiss and Remand [doc. #13-1, p. 4] ("The defendant lists his causes of action on the Civil Cover Sheet under 41 [USC] § 6503, 18 USC § 1348, and 18 USC § 1343 as causes of action against plaintiff for breach of contract, securities fraud, and wire fraud."). While the undersigned recognizes Watkins' pro se status, the Civil Cover Sheet is not a pleading. *See* FED. R. CIV. P. 11(a) (listing requirements for pleadings); *see also Gonzalez v. Wal-Mart Stores, Texas, LLC*, No. 14-2880, 2015 WL 3613648, at *4 (S.D. Tex. June 9, 2015) ("The civil cover sheet is

5

not a pleading . . . ."). Consequently, the undersigned declines to rely on that document to assess what counterclaims Watkins has brought. Instead, the Court must look to the Second Amended Counterclomplaint, which constitutes Watkins' operative pleading. Having established the relevant source for the allegations scrutinized herein, the undersigned now turns to the merits of the pending motion.

Watkins' first counterclaim arises under 12 U.S.C. § 1431. Second Amended Counterclomplaint [doc. #20, p. 1]. Watkins alleges that "GNOFCU AND TRAVIS failed their powers and duties violating 12 USC 1431, by not paying interest on the negotiable instruments for the consumer back towards the principal account." *Id.* Section 1431 governs the powers and duties of banks established under authority of the Federal Home Loan Bank Act. *See* 12 U.S.C. § 1421-22. The provision cited by Watkins does not create a cause of action or remedy. *See generally id.* at § 1431. Even if Watkins could bring a claim under § 1431 against the Counterclaim Defendants, the allegations do not establish that they violated any aspect of that provision.[3] Accordingly, it would be inappropriate to find that Watkins has stated a counterclaim under § 1431.

Watkins' second counterclaim arises under "Federal Reserve Act 29." Second Amended Counterclomplaint [doc. #20, p. 1]. He alleges that the Counterclaim Defendants "breached the contract and their fiduciary duty and responsibilities under Fed. Reserve Act 29, by not acting in

---

[3] Section 1431 empowers banks covered by the law "to borrow and give security therefor and to pay interest thereon." *Id.* at § 1431(a). The law also requires that covered banks "bear a rate of interest not less than [the bank's] current marginal cost of funds." *Id.* at § 1431(k)(3). These provisions grant banks the power to pay interest and set a floor for the rate of interest they bear. These provisions do not obligate covered banks to pay interest on negotiable instruments. Watkins has failed to establish how the Counterclaim Defendants could violate this provision or how he could recover for any such violation.

a way that benefits the consumer, creditor, investor knowing the consumer brings the value and GNOFCU is stated as borrowers." *Id.* The citation to "Fed. Reserve Act 29" is insufficiently specific for this Court or the Counterclaim Defendants to determine which statutory provision allegedly creates Watkins' asserted cause of action. Accordingly, Watkins has failed to state a counterclaim under "Fed. Reserve Act 29."

Watkins' next counterclaim is predicated on 18 U.S.C. § 1348. Second Amended Countercomplaint [doc. #20, p. 1]. Watkins alleges that the Counterclaim Defendants committed "security fraud by retaining the negotiable instrument knowing they borrow all securities of a consumer." *Id.* at pp. 1-2. Section 1348 prohibits knowingly and fraudulently conveying or obtaining certain classes of securities subject to the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* 18 U.S.C. § 1348.[4] In order to be found guilty under § 1348, the statute "requires [a showing of] the specific intent to defraud, i.e., a conscious knowing intent to defraud." *United States v. Greenlaw*, 84 F.4th 325, 339 n.4 (5th Cir. 2023) (quoting *United States v. Brooks*, 681 F.3d 678, 699 (5th Cir. 2012)). Section 1348 is a criminal provision, *see* 18 U.S.C. § 1348 (directing that violators of § 1348 "shall be fined under this title, or imprisoned not more than 25 years, or both."), and does not provide for civilian enforcement. *See generally id.* at § 1341-51.

Watkins has not alleged that the Counterclaim Defendants attempted to sell or purchase any securities covered by § 1348. While Watkins does allege that they "retain[ed] the negotiable instrument knowing they borrow all securities of a consumer," it is not apparent from the Second Amended Counterclaim what constitutes the alleged negotiable instrument or whether it constitutes a covered security. Watkins has thus failed to make plausible factual allegations

---

[4] The provision applies to securities of an issuer with a class of securities registered under 15 U.S.C. §§ 78l, 78o(d).

concerning the existence of a relevant security. The conclusory allegation that this conduct was knowing also falls short of the pleading standard. Finally, Watkins has pointed to no provision of law to support civilian enforcement of this criminal provision. Consequently, Watkins has failed to state a counterclaim under § 1348.

Watkins' final counterclaim arises under "Federal Reserve Act Section 16 part 2." Second Amended Countercomplaint [doc. #20, p. 2]. The undersigned understands this to refer to 12 U.S.C. §§ 241-253, which is designated as Subchapter II of U.S. Code Chapter 3. Watkins alleges that the Counterclaim Defendants violated this provision as he "applied for 7,000 but was told by GNOFCU [he] could only access 3,000 which is deceitful and unsafe and unsound business practice." Second Amended Countercomplaint [doc. #20, p. 2]. As Watkins has not cited a specific portion of this subchapter, it is impossible to assess what specific statutory provision the Counterclaim Defendants are alleged to have violated. Furthermore, this subchapter describes the structure and powers of the Board of Governors of the Federal Reserve System and does not contain any causes of actions or remedies. *See generally* 12 U.S.C. §§ 241-253. The undersigned cannot find that Watkins has stated a counterclaim under §§ 241-253. Watkins has thus failed to state counterclaims under 12 U.S.C. § 1431, "Federal Reserve Act 29," 18 U.S.C. § 1348, and 12 U.S.C. §§ 241-253.

Accordingly, it is RECOMMENDED that the Third Motion to Dismiss and Remand be granted to the extent it seeks dismissal of Watkins' counterclaims.

c. *Remand*

If Watkins' counterclaims are dismissed, the only claim before the Court is GNO FCU's breach of contract claim seeking payment of Watkins' credit card bill. *See* Petition [doc. #1-2]. Watkins has specifically predicated removal jurisdiction on this Court's federal question and

diversity jurisdiction under 28 U.S.C. §§ 1331, 1332(a). *See* Notice of Removal [doc. #1] ("This case has become removable because the amount in controversy exceeds 75,000 and violation of civil rights, and federal law."). As only the state law breach of contract claim remains, federal question jurisdiction no longer exists. The only remaining asserted basis for jurisdiction is thus diversity jurisdiction.

Here, the outstanding balance on Watkins' account is $3,090.88 with unpaid finance charges of $212.04. Petition [doc. #1-2, p. 3]. GNO FCU also seeks payment of interest on this unpaid principal at a rate of 18% per annum from January 25, 2024, as well as attorney's fees of 25% of the principal and interest due.[5] Consequently, the sum demanded in good faith in the initial pleading falls short of the amount in controversy requirement. This Court thus lacks diversity jurisdiction over the instant matter.

The Court could elect to exercise supplemental jurisdiction over the remaining claim pursuant to 28 U.S.C. § 1367. However, Watkins has not argued that the Court should exercise supplemental jurisdiction and the procedural posture of this matter counsels against use of such jurisdiction. Courts may decline to exercise supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are

---

[5] "The law is now quite settled that attorney's fees are a part of the matter in controversy when they are provided for by contract or by state statute." *Forest v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990) (quoting 14B C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3712 (2d ed. 1985)). GNO FCU has alleged that the credit card agreement at issue includes a provision that failure to timely repay debts arising from use of the card subjects Watkins to liability for "all costs of collecting any amounts owed . . . including court costs and reasonable attorney's fees." *Id.* at pp. 2-3. Attorney's fees may therefore be included in the calculation of the amount in controversy in this matter.

other compelling reasons for declining jurisdiction. *Id.* at § 1367(c). Here, the undersigned has recommended dismissing all federal claims, which is to say all claims over which the Court has original jurisdiction. It is thus appropriate to decline to exercise supplemental jurisdiction.

Accordingly, it is RECOMMENDED that the Third Motion to Dismiss and Remand be granted to the extent it seeks remand to the Fourth Judicial District Court, Morehouse Parish, Louisiana.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff/Counterclaim Defendant Greater New Orleans Federal Credit Union and Counterclaim Defendant Travis Nguyen's first and second motions to dismiss and remand [docs. #8, 13] be **DENIED AS MOOT**, the Third Motion to Dismiss and Remand [doc. #21] be **GRANTED**, the Second Amended Countercomplaint [doc. #20] be **DISMISSED WITHOUT PREJUDICE**, and the case be **REMANDED** to the Fourth Judicial District, Morehouse Parish, Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL**

**BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 2nd day of August, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE